FILED
U.S. District Court
District of Kansas
09/21/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**NICHOLAS ROBERT STROBEL,**

**Plaintiff,**

**v.** **CASE NO. 26-3211-JWL**

**UNITED STATES OF AMERICA,**

**Defendant.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Nicholas Robert Strobel is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

### I. Nature of the Matter before the Court

Plaintiff brings this pro se case under the Federal Tort Claims Act ("FTCA"). Plaintiff is incarcerated at Marion-FCI in Marion, IL. The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff seeks money damages for property lost or damaged while he was housed at FCI-Leavenworth in Leavenworth, Kansas ("FCIL"). (Doc. 1, at 3.) Plaintiff has set forth multiple claims in his Complaint, and argues that none of the actions by FCIL staff fall within the discretionary function exception under the FTCA. Plaintiff states that the discretionary function exception does not apply because "[i]n every TORT that is in this claim staff through objectively unreasonable behavior, malice, neglect, and bad faith actions by all staff involved there are direct statutes, regulations and policy in place that staff did not follow." *Id*. at 24. For the claims set forth below, Plaintiff claims that he has "confirmation of Administrative Remedy exhaustion for

all . . . TORTs as of April 2026." *Id*. at 9.

**A. TRT-NCF-2024-05539 ($134.00)**

Plaintiff alleges that on or about October 11, 2023, he had to tear off the front and back binding covers from his book after Officer Calhoun told him he could not have hardcover books. *Id*. at 4. Plaintiff wrote on the front page "Officer Calhoun ordered me to tear off the cover at R&D Leavenworth on 10-11-2023." *Id*. During a random search at a later date, an officer confiscated the book because it was altered. *Id*. Plaintiff claims that Officer Calhoun's action and the confiscation of his book were not in compliance with BOP policies. *Id*.

**B. TRT-NCR-2044-06495 ($310.45)**

Plaintiff claims that on March 25, 2024, inmates were given green duffle bags and told that all their allowable items must fit within the bag, and that for any excess or unauthorized property they would have the choice to dispose of it or mail it home at their expense. *Id*. at 10. They were told that any items left in their cell that was not in the green duffle bag would be disposed of as trash. *Id*. Plaintiff claims that his approved property that was in the bag, but is now missing, includes: a photo album and photos, headphones, a cap, shorts, two t-shirts, five underwear, a booklight, a sewing kit, and several items of correspondence from publishers and companies. *Id*. Plaintiff claims that his items were not contraband, and he was not provided with confiscation forms, the return of his property, or the opportunity to prove ownership in the items. *Id*.

**C. TRT-NCR-2024-04454 ($41.85)**

Plaintiff alleges that on December 24, 2023, he was preparing a large holiday meal for himself and more than twelve other participants. *Id*. at 11. Plaintiff claims that when Officer Gildner came to do the 4:00 pm count, Plaintiff's cellmate was not in the cell but was about six feet away. *Id*. at 11. Plaintiff alleges that Gildner then did a retaliatory shakedown and dumped

water and clothes that were being washed, then dumped personal items onto the clothes/water. *Id*. She also took all of the food being prepared, claiming that it was not in its original packaging. *Id*.

**D. TRT-NCR-2024-05540 ($44.00)**

Plaintiff claims that on February 9, 2024, CO Boatright denied Plaintiff's incoming publications as sexually explicit, even though they did not qualify under policies and the Code of Federal Regulation. *Id*. at 12.

**E. TRT-NCR-2024-06901 ($6.50)**

Plaintiff claims that this tort claim is for a copy card that he reported to staff as not working properly. *Id*. at 19. After that staff member retired, staff failed to either replace his card or pass on the information that it was not working.

**F. TRT-NCR-2025-09210 ($72.00)**

Plaintiff asserts that this claim is for newspapers that officers denied him while he was in administrative segregation at FCIL. *Id*. at 17.

**G. TRT-NCR-2025-08895 ($474.30)**

Plaintiff alleges that around April 11, 2025, he was strip searched after another inmate was smoking K2 in his cell. *Id*. at 13. Plaintiff alleges that after the search he got dressed and two officers spent almost fifty minutes destroying his cell and property. *Id*. Plaintiff claims that they cut his personal towel in half and clogged his toilet with the contents of his terrarium (including the spider he had for 16 months), two prescriptions, two full rolls of toilet paper, and several family photos. *Id*. Plaintiff claims that the two officers walked all over their property that was on the floor. *Id*. Plaintiff claims that one of the officers left with Plaintiff's Passover cup and threw it in the trash. *Id*. Plaintiff claims that he provided proof of ownership, but neither his documentation regarding ownership nor the Passover cup were returned in the following months. *Id*. at 14.

Plaintiff claims that on April 12, 2025, he and his cellmate were sent to the SHU. *Id.* Earlier that day, Plaintiff was told to pack up his personal property, and he packed it and had a list of 26 items that were broken or destroyed during the search. *Id.* Plaintiff claims that he was ordered to leave his stuff in his cell despite his protests that it would get stolen. *Id.* Plaintiff claims that he was allowed to take his religious supplies as far as the Lt.'s office and was able to secure some of his personal property in the locker in his cell. *Id.* Plaintiff claims that he was denied his legal work and publications while housed in the SHU. *Id.* at 15. Plaintiff claims that when his cell door was opened to allow an inmate to retrieve books he had given to Plaintiff's cellmate, other inmates were allowed to steal his property that he was forced to leave in his cell prior to going to the SHU. *Id.* at 16. He states that Mr. Collins was able to save some of Plaintiff's paperwork, and fortunately Plaintiff had locked up some of his expensive property. *Id.* Plaintiff claims that when he received his property from FCIL at FCI-Marion on September 4, 2025, property was missing from the boxes. *Id.* at 17.

**H. Request for Relief**

Plaintiff is seeking a total of $5,574.08 in damages. *Id.* at 6, 25. Although Plaintiff lists the individual FTCA claims set forth above (which total $1083.60), he also claims the following: TRULINCS compensation ($174.40); Property/Photos ($175.00); Publications ($548.23); Property Inventoried ($1422.70); Purchase/Commissary ($696.05); Court Documents @ $.5 per [sic] for Case #24-3105-JWL ($268.50); Filing Fee ($350.00); Case #3:23-cv-01792-mc ($223.00); TRULINCS ($235.20); Misc. Itemized Religious item (cup) ($30.00); and Other – Filing fee for this Complaint ($350.00) and Copies of Complaint ($25.90). *Id.* at 25. Plaintiff has also requested a jury trial. *Id.* at 24–25.

**I. Exhibits**

Plaintiff attaches a 61-page exhibit to his Complaint that is formatted to include four pages on each page. He includes correspondence from the North Central Regional Office of the Bureau of Prisons, and argues that although correspondence indicates that some of his claims were denied on March 17, 2025, he "did not receive these referenced letters that North Central claims were denied on 3-17-25 until 4-15-26." (Doc. 1–1, at 3). He claims FCIL staff signed for the certified letters on March 19, 2025, but never delivered any of them to Plaintiff. *Id.*; *see also* Doc. 1, at 8–9. Plaintiff claims that even considering the March 17, 2025 date, North Central Region's response was late. (Doc. 1, at 8–9.)

**II. Statutory Screening**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to

plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

The FTCA, 28 U.S.C. §§ 1346(b)(1), 2671–2680, "allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties." *Ingram v. Faruque*, 728 F.3d 1239, 1245 (10th Cir. 2013) (citing § 1346(b)(1)). The FTCA "provides the exclusive avenue to assert a claim sounding in tort against the United States." *Franklin Sav. Corp., In re*, 385 F.3d 1279, 1286 (10th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005) (citing 28 U.S.C. § 2679(a), which provides that "the FTCA remedy is 'exclusive' for all 'claims which are cognizable under section 1346(b)'").

"The question of whether sovereign immunity exists 'is jurisdictional in nature.'" *Ortiz v. ex rel. Evans Army Cmty. Hosp.*, 786 F.3d 817, 820 (10th Cir. 2015) (quoting *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S. Ct. 996, 127 L.Ed.2d 308 (1994)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.* "Although the FTCA constituted an expansive waiver of the federal government's sovereign immunity for torts committed by government actors, several exemptions apply." *Id*. (citing *Ali v. Federal Bur. of Prisons*, 552 U.S. 214, 215 (2008)).

In addressing the scope of the exceptions carved out in 28 U.S.C. § 2680, the Supreme Court in *Ali* stated that "Section 2680(c) provides that the waiver of sovereign immunity does not apply to claims arising from the detention of property by 'any officer of customs or excise or any other law enforcement officer.'" *Ali*, 552 U.S. at 215–16. In *Ali*, the petitioner claimed that after he was transferred to a different BOP facility, items of his personal property were missing. *Id*. at 216. The Supreme Court held that the term "law enforcement officer" in § 2680(c) included the

BOP officers in that case who allegedly lost petitioner's property. *Id*. at 218; *see also Williams v. Mestas*, 355 F. App'x 222, 225 (10th Cir. 2009) (unpublished) (holding that FTCA claim against prison officials arising from mishandling of personal property during transfer to another institution was improper because claim was barred by sovereign immunity); *Robinson-Bey v. Feketee*, 219 F. App'x 738, 741–42 (10th Cir. 2007) (holding that FTCA did not waive sovereign immunity as to inmate's claim for lost or stolen property allegedly in possession of prison officials); *Greer v. U.S.*, 72 F. App'x 793, 797 (10th Cir. 2003) (unpublished) (finding United States did not waive sovereign immunity where legal documents were "goods" and prison employees are "law enforcement officers" under 28 U.S.C. § 2680(c)).

This Court has had a similar case involving an inmate from FCIL claiming that his property was lost when inmates were required to place their property in the green duffle bag in March 2024. *See Creel v. United States*, 2025 WL 2256201, at *1 (D. Kan. Aug. 7, 2025). This Court held in *Creel* that:

> Plaintiff has not provided any authority in support of his argument that he did not claim that the BOP officers detained his property. Whether he claimed it or not, the cases dealing with BOP officers' handling of an inmate's property support the finding that this constitutes detention. *See Brown v. United States*, 384 F. App'x 815, 818 (10th Cir. 2010) ("we have held that § 2680(c) bars a prisoner's claim to recover for lost personal items that were detained by officers when he was placed in the SHU") (unpublished) (citing *Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1206, 1213 (10th Cir.2003), *abrogated on other grounds by Jones v. Bock,* 549 U.S. 199, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007); *see also Hatten v. White,* 275 F.3d 1208, 1210 (10th Cir. 2002) (holding § 2680(c) applies when prisoner alleges officers detained property and mailed it outside prison)); *see also Paredes*, 2010 WL 1643767, at *2 ("Section 2680(c) includes claims 'arising out of' the detention of property, and both negligent handling or storage.") (citing *Kosack*, 465 U.S. at 854).
>
> In *Brown*, the Tenth Circuit rejected an argument that the BOP officers did not "handle" Brown's property because they did not touch it. *Brown*, 384 F. App'x at 818. The Tenth Circuit held

that:

> Mr. Brown's singular focus on the officer's failure to touch his property before allowing other prisoners access to it improperly equates "handle" with "detain." Mr. Brown alleged that a BOP officer tasked with detaining his property used a key to open his storage locker. At that point the BOP officer was exercising a measure of dominion over Mr. Brown's property such that it was within the officer's custody. Mr. Brown alleged the officer then wrongfully permitted other inmates to rifle through the locker and steal some of his property. His allegations fall squarely within the scope of a claim for wrongful detention of property under § 2680(c).
>
> *Id*. (citing *Kosak,* 465 U.S. at 854; *Steele,* 355 F.3d at 1213; *see also* 4 Oxford English Dictionary 545 (2d ed.1989) (defining "detention" broadly, as "[k]eeping in custody or confinement," not as limited to physical handling or restraint)).

*Creel v. United States*, 2025 WL 2800012, at *2–3 (D. Kan. Oct. 1, 2025).

In *Creel*, this Court also held that to the extent a plaintiff claims that the destruction of property was intentional, that claim also falls outside of the FTCA. *Id*. at *3 (citing *Williams v. Mestas*, 355 F. App'x 222, 225 (10th Cir. 2009) (unpublished) ("Insofar as Mr. Williams might argue that the property damage was intentional, moreover, the statute would not waive sovereign immunity for that type of intentional action.") (citing 28 U.S.C. § 2680(h); *Lane v. Pena,* 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statutory text, and will not be implied.") (citations omitted)); *see also Dalton v. United States*, 2022 WL 21808236, at *2–4 (D. Colo. 2022), *adopted by* 2022 WL 21808239 (D. Colo. 2022) (citing *see* 28 U.S.C. § 2680(h) (the waiver of immunity for intentional torts is limited to assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution)).

"When an exemption applies, we revert to the baseline application of the government's sovereign immunity, which deprives the federal courts of jurisdiction." *Ortiz*, 786 F.3d at 820

(citation omitted); *see also Dickerson v. USP Leavenworth*, 2025 WL 834727, at *3 (D. Kan. 2025) (finding that the Court did not need to address the discretionary function exception and stating that "[b]ecause the Court finds that Plaintiff's claim falls within the detention of goods exception, it does not need to determine the applicability of any other exception to the FTCA"). Plaintiff should show good cause why his claims regarding the alleged loss of his personal property by BOP officers should not be dismissed for lack of subject matter jurisdiction based on the exemption established by 28 U.S.C. § 2680(c).

**IV. Request for Appointment of Counsel**

Plaintiff sets forth all his tort claims in his Complaint, then includes a section titled "Civil & Torts." *Id*. at 20–23. Plaintiff sets forth various issues at facilities he has been housed at over the years. *Id*. After setting forth issues he claims he has encountered at the various facilities, he states that he is requesting court-appointed counsel because his legal mail that he gave to staff from mid-March 2025 to August 7, 2025, was not mailed out from FCIL. *Id*. at 22–23.

He claims that he is "tak[ing] this opportunity to document in court and for the court." *Id*. at 23. He appears to be reciting this history to support his request for appointment of counsel. He also states that "[s]ince I am only now aware of their actions, I hope that the date for filing a new TORT of all these loss' starts now. I also hope that the date for any other litigation for all of the other constitutional violations starts from now also." *Id*. Plaintiff claims that he "will be following what laws [he] can figure out after [he] starts the administrative remedy for the 'loss' of all of the legal mail that staff did not mail or pack for [him]." *Id*. Plaintiff states that he fully intends to file a separate suit for constitutional violations and RFRA violations, "one will be forthcoming," and he wishes "to keep this suit to TORT (FTCA) so it does not confuse [him] or complicate it." *Id*.

Therefore, the Court will only consider this section as support for his request for counsel and will not consider it as asserting a claim in this FTCA case. Plaintiff alleges that counsel is needed due to his issues with legal mail being mailed out. He alleges that this occurred from March to August of 2025 at FCIL. However, Plaintiff is no longer housed at FCIL and is currently in custody at USP-Marion. Plaintiff also argues that he needs counsel "to figure out if [he] should amend [his] complaint to include all of the blatant Constitutional violations." *Id*. at 25.

The Court has considered Plaintiff's request for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion without prejudice to refiling if this matter survives screening.

**V. Request for Forms and List of Attorneys**

Plaintiff has included with his Complaint a letter to the Clerk asking for forms/instructions. (Doc. 1–2.) He claims he discovered that three of the missing photos of his children from his photo album had been sold or traded amongst inmates. *Id*. He claims that he was able to get the photos back, and is requesting counsel and forms/instructions. The Court has denied Plaintiff's request for the appointment of counsel. However, the Court will direct the Clerk to provide Plaintiff with forms and instructions.

Plaintiff has also filed a letter to the Court asking for a list of attorneys or law offices that he can contact for representation. (Doc. 7.) The Court is attaching information from the Court's Pro Se Guide that provides resources for pro se litigants seeking legal advice.

**VI. Response Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this matter without further notice for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's request for the appointment of counsel is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **October 21, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that the Clerk is directed to send § 1331 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated September 21, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**